RENDERED: APRIL 23, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0115-MR

JIM KING                                                                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.       HONORABLE JUDITH E. MCDONALD-BURKMAN, JUDGE
ACTION NO. 16-CI-003013

BEVERAGE WAREHOUSE, LLC
AND GREGORY ANASTAS                                              APPELLEES

OPINION
DISMISSING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; GOODWINE AND KRAMER,
JUDGES.

CLAYTON, CHIEF JUDGE: Jim King, the former ABC (Alcoholic Beverage

Control) Administrator for the City of St. Matthews, appeals from orders of the

Jefferson Circuit Court which set aside a previous grant of summary judgment to

King and held that he is not entitled to qualified official immunity from claims of

negligence in granting a liquor license. Having reviewed the record and the

applicable law, we conclude that we are without jurisdiction to hear this appeal, and consequently, it must be dismissed.

## Factual and Procedural Background

In February 2009, Liquor Barn filed a public notice of intent to apply for a liquor license to operate a retail package liquor store in St. Matthews, a fourth-class city located in the Louisville metropolitan area. The proposed location of the new store was across the road from another package liquor retailer, Beverage Warehouse.

A St. Matthews ordinance in effect at that time required a minimum distance of 700 feet between two retail package liquor stores. The ordinance prescribed the following method for measuring the distance:

> All distances referred to in this ordinance shall be measured along the right-of-way of existing public vehicular roadways from a point on any such right-of-way line nearest the entrance of any such existing premises licensed for such sales to a point on any such right-of-way line nearest the entrance of the proposed licensed premises. All intersecting right-of-way lines shall be measured at right angles and where it is necessary in such measurement to cross a right-of-way the measurement shall be made at right angles.

St. Matthews Ordinances § 111.15(E).

At that time, King was serving as the St. Matthews ABC Administrator with the same functions with respect to city licenses and regulations as the state Board of Alcoholic Beverage Control. Kentucky Revised Statutes

(KRS) 241.190. KRS 243.450(1)(b) at that time provided that an applicant for a license had to comply with the regulations of the city administrator. KRS 241.190 provided that no regulation adopted by the city administrator could be less stringent than the state statutes relating to alcoholic beverage control or the ABC Board's regulations. Within this framework, it was King's task to ensure that Liquor Barn's application complied with the relevant St. Matthews ordinances. Accordingly, he instructed his zoning and enforcement officer to make a preliminary unofficial measurement between the front doors of the Beverage Warehouse and the proposed Liquor Barn location, using the method set forth in the ordinance. The measurement indicated a distance of less than 700 feet between the two establishments.

According to Jim Anastas, the owner and operator of Beverage Warehouse, when he contacted King to express his opposition to the proposed Liquor Barn site, King told him that the location would violate the St. Matthews' ordinance and assured him the only way Liquor Barn would get the license would be over "his dead body." In a letter dated March 10, 2009, King informed Liquor Barn's legal counsel, Kenneth S. Handmaker, that the proposed location was too close to Beverage Warehouse.

Handmaker responded with a letter, in which he accused King of prejudging the case before the application for a license was even filed, in violation

of Liquor Barn's basic due process rights. He asserted that a professional engineer had determined, using "legally established methods of measurement," that the distance between the two stores was 830 feet.

In his deposition testimony, King testified that he spoke with the St. Matthews City Attorney about Handmaker's letter but could not recall what was said. King also contacted the state ABC for guidance regarding how to measure between the stores. He testified, "I did call the state and said, 'We have an ordinance about 700 feet distance, and can you give me any assistance on how to measure that?' And their response was, 'I can send you a copy of Bambi Bar's appeal court answer' or whatever 'on how you' -- or 'how it's to be measured.' And that's – when I got that, I read it, and I looked at the thing. I had the distance, measured it according to the [Bambi Bar case]."

The so-called "*Bambi Bar* case" to which King was referring addressed the proper method of measuring between two establishments for purposes of granting a liquor license. *See Louisville/Jefferson County Metro Government v. Commonwealth*, No. 2005-CA-000343-MR, 2006 WL 3524350 (Ky. App. Dec. 8, 2006). The statute at issue in that case, KRS 241.075, was similar to the St. Matthews' ordinance in prohibiting the issuance of a retail package liquor or retail drink liquor license to a business located 700 feet or less from a similar establishment in certain areas. But the method of measurement set

-4-

forth in the statute differed substantially from that in the St. Matthews ordinance.

It provided:

> The distance between location of similar establishments . . . **shall be measured by following the shortest route of ordinary pedestrian travel** along public thoroughfares from the nearest point of any present location of any such similar place of business to the nearest point of any proposed location of any such place of business. The measurement shall be taken from the entrance of the existing licensed premises to the entrance of any proposed location.

KRS 241.075(3) (emphasis supplied).[1]

In the "*Bambi Bar*" case, this Court construed the phrase "the shortest route of ordinary pedestrian travel" to mean the shortest legal route between the establishments using a marked crosswalk. *Louisville/Jefferson County Metro Government v. Commonwealth*, 2006 WL 3524350 at *3.

In 2009, the Kentucky Supreme Court addressed KRS 241.075(3) again in the so-called "*Molly Malone's*" case and reiterated that "the shortest route of ordinary pedestrian travel" required the measurement to "be taken along a route that is both lawful and safe." *Louisville/Jefferson County Metro Government v. TDC Group, LLC*, 283 S.W.3d 657, 661 (Ky. 2009).

---

[1] This version of KRS 241.075 was later found to be unconstitutional for reasons which do not affect this Opinion and was repealed. *See Louisville/Jefferson County Metro Government v. O'Shea's-Baxter, LLC*, 438 S.W.3d 379, 386 (Ky. 2014) (holding that the statute was special legislation which violated Sections 59 and 60 of the Kentucky Constitution).

According to King, when he used this method to measure between the Beverage Warehouse and the Liquor Barn sites, he found that more than 700 feet separated the stores. King approved Liquor Barn's application on April 15, 2009 and the requisite state liquor licenses were issued on October 15, 2009.

Meanwhile, on February 23, 2009, Beverage Warehouse had filed a formal protest with the ABC on the basis that the proposed Liquor Barn license was in violation of the St. Matthews ordinance. The ABC Board declined to hear the case. Beverage Warehouse appealed the decision to the Franklin Circuit Court which ruled that Beverage Warehouse was entitled to a hearing before the Board. On appeal, this Court affirmed the ruling of the circuit court and remanded the case to the Board for a hearing. *Beverage Warehouse, Inc. v. Commonwealth, Dep't of Alcoholic Beverage Control*, 382 S.W.3d 34, 46 (Ky. App. 2011).

On remand, the Board conducted an extensive hearing and found that the distance between Beverage Warehouse and Liquor Barn was less than 700 feet, whether it was measured following the method in KRS 241.075(3) or St. Matthews' ordinance. It concluded that there was at least one safe and lawful pedestrian route and at least one safe and lawful vehicular route between the two stores measuring less than 700 feet and held that the issuance of the liquor package licenses to Liquor Barn violated both the state statute and the city ordinance. Specifically, as to King, the Board rejected Liquor Barn's argument that King had

acted within the scope of his duties erroneously but reasonably in interpreting the

ordinance or the statute and that Liquor Barn had relied upon his error in good faith

and was therefore entitled to invoke the defensive doctrines of honest error and

equitable estoppel. The Board's order stated in pertinent part as follows:

> Here, Mr. King did not misinterpret the [St. Matthews] Ordinance – he admittedly *ignored* it altogether. He testified he thought it did not apply. He reached this decision on his own by interpreting KRS 241.075 and the applicability of the *Molly Malone* case without the advice of available St. Matthews counsel. He instead relied on the advice of Liquor Barn's attorney Mr. Handmaker. Even if Mr. King was not just caving in to pressure from Liquor Barn, there is nothing reasonable about his decision *not* to follow the law that he admitted he was required to enforce as the administrator, nor can he be said to have been acting in good faith by so proceeding without counsel and in the face of Liquor Barn's prodding and threats. Finally, Liquor Barn has not shown that it relied upon Mr. King's action in good faith. . . . There was a lack of good faith on the part of Mr. King and a lack of good faith reliance, not to mention unclean hands on the part of Liquor Barn. The Board finds the doctrines of honest error and equitable estoppel are not intended to be applied to a situation like this where Liquor Barn had knowledge the license could not be issued due to the Ordinance or KRS 241.075 before it ever applied for a license, participated in a plan to avoid compliance with the Ordinance and KRS 241.075, threatened the administrator with repercussions if the license was not issued, and took a calculated business risk to spend money on the premises so that it could later claim the *status quo* should be maintained due to the significant expenditure of money despite the violations.

Record ("R.") at 1206-07.

Liquor Barn appealed the Board's decision to the Franklin Circuit Court and then to this Court. Meanwhile, the Liquor Barn store, which had been closed for several months, was sold. In October 17, 2015, Liquor Barn voluntarily dismissed its appeal.

On June 28, 2016, Beverage Warehouse and Anastas filed suit against Liquor Barn, its former owner, Robert Rosenstein, the City of St. Matthews, and King, in his individual capacity and in his official capacity as the ABC Administrator for the City of St. Matthews. The complaint alleged that King had conspired with Liquor Barn and Rosenstein to have the Liquor Barn license issued illegally and raised claims including civil conspiracy, negligence and/or negligence *per se*, violation of a statute, and malfeasance and/or nonfeasance. The complaint sought compensatory and punitive damages.

The defendants brought motions to dismiss which were denied in an order entered on January 26, 2017. The trial court held that St. Matthews and King could not invoke the Claims Against Local Governments Act, KRS 65.200 *et seq.*, nor the doctrine of qualified official immunity. In reference to King, the trial court outlined the test for qualified official immunity and stated:

> KRS 243.450 required the denial of an application if it did not comply with all the regulations, including the 700 foot rule. Either it complied or it did not. Furthermore, the ABC found King had not acted in good faith and "there is nothing reasonable about his decision *not* to follow the law." This lack of good faith prevents St.

Matthews or King from being immune to the claims asserted.

R. 286. King and St. Matthews did not to bring an interlocutory appeal from this ruling.

In March 2019, King and St. Matthews filed a motion for summary judgment which did not raise immunity defenses. The co-defendants, Liquor Barn and Rosenstein simultaneously renewed a previously filed motion for summary judgment. Following oral arguments, the trial court granted summary judgment to all the defendants on June 27, 2019. It held with respect to King that, "he conducted himself in a manner consistent with his duties as ABC Commissioner [of St. Matthews] by contacting [state] ABC personnel to learn the appropriate means of measuring the distance between the two establishments." R. at 1271.

On July 8, 2019, Liquor Barn and Anastas filed a motion to alter, amend, or vacate the grant of summary judgment, arguing under Kentucky Rules of Civil Procedure (CR) 52.04 that the trial court's opinion contained factual and legal errors and omissions. Specifically, in regard to King, the motion cited the findings of the ABC Board that the distance between the stores, measured using either the statutory or ordinance method, was under 700 feet, that King's call to the state ABC did not excuse him from complying with the St. Matthews ordinance, and there was no evidence that the ABC clerk even knew there was such an

ordinance. The motion argued that the statute and the ordinance imposed an obligation that was ministerial rather than discretionary.

St. Matthews and King responded that the motion did not meet the requirements for relief under CR 59.05 and argued that the findings of the Board were not binding on St. Matthews and King, who were not parties to the action before the Board, which had addressed only the propriety of granting the liquor license, not the claims in the complaint of civil conspiracy and negligence. The plaintiffs replied that there was direct and circumstantial evidence in the record, including testimony before the Board and the Board's findings, that could be considered by a jury and therefore precluded a grant of summary judgment.

The trial court denied the motion except insofar as it related to the negligence claim against the City of St. Matthews and King and entered an order on September 16, 2019, setting aside the summary judgment granted to these defendants. In regard to King, the trial court cited the well-established rule that "a public officer who knowingly or negligently fails or refuses to execute a ministerial act, which the law positively charges him to carry out, may be compelled to answer in damages to any person to whom the performance was owing to the extent of the injury proximately caused by the nonperformance." *Upchurch v. Clinton County*, 330 S.W.2d 428, 431 (Ky. 1959). The trial court ruled that a jury could find that King failed to perform a ministerial duty when,

instead of measuring the distance as mandated by the ordinance, he contacted the state ABC and construed the *Molly Malone's* case on his own without consulting the St. Matthews city attorney.

King then filed a motion to alter, amend, or vacate, raising the defense of qualified official immunity based on the court's previous ruling. The motion argued that King's decision regarding which source to use in determining how to measure between the two stores was a discretionary act, and he was consequently protected by official immunity from the negligence claim.

The trial court denied the motion in an order entered on January 6, 2020. It held that St. Matthews and King had not met the standard for relief under CR 59.05 because the issues raised in their motion had been before the court on multiple previous occasions. It further reiterated, citing *Godman v. City of Fort Wright*, 234 S.W.3d 362 (Ky. App. 2007), and *Wales v. Pullen*, 390 S.W.3d 160 (Ky. App. 2012), that a statutory duty was a ministerial duty and that it was King's ministerial duty to measure the distance between the two liquor stores in accordance with the method set forth in the ordinance. Because King chose instead to follow the advice given by the ABC, the trial court held that a jury could find he had breached his ministerial duty.

King filed a notice of appeal from the trial court's order denying his motion to alter, amend, or vacate and then amended the notice of appeal to include

-11-

the underlying order of September 16, 2019, which set aside the grant of summary judgment as to St. Matthews and King.[2]

**Analysis**

As a preliminary matter, we address the appellees' argument that King's invocation of official immunity was improperly presented before the trial court and inadequately preserved for appellate review. As described above, King had raised the defense of official immunity unsuccessfully earlier in the proceedings and did not file an interlocutory appeal from the trial court's January 26, 2017 order. The appellees argue that he is consequently foreclosed from raising the issue again. We agree.

Generally, the "denial of a motion for summary judgment is . . . not appealable because of its interlocutory nature[.]" *Transportation Cabinet, Bureau of Highways, Commonwealth of Ky. v. Leneave*, 751 S.W.2d 36, 37 (Ky. App. 1988). An exception is made for an order denying a substantial claim of absolute immunity or qualified official immunity, which is immediately appealable. *Harrod v. Caney*, 547 S.W.3d 536, 540 (Ky. App. 2018).

The extent of our review in this type of appeal is strictly limited "to the issue of immunity, and no substantive issues." *Baker v. Fields*, 543 S.W.3d

---

[2] King's first notice of appeal is taken from the order denying his motion to alter, amend, or vacate and gives January 3, 2020, as the date of that order. The record shows the order was actually entered on January 6, 2020. His amended notice of appeal clarifies this distinction and also adds the September 16, 2019 order.

575, 578 (Ky. 2018). The Kentucky Supreme Court has specifically held "that an appellate court reviewing an interlocutory appeal of a trial court's determination of a defendant's immunity from suit is limited to the specific issue of whether immunity was properly denied, nothing more." *Id.*

In its order of January 26, 2017, the trial court expressly held that immunity was not available to King or St. Matthews. This ruling was immediately appealable. *Harrod*, *supra*. The purpose of allowing such an instant, interlocutory appeal is "to address substantial claims of right which would be rendered moot by litigation and thus are not subject to meaningful review in the ordinary course following a final judgment." *Baker*, 543 S.W.3d at 577 (citation omitted). For this reason, the Kentucky Supreme Court has stated that "orders denying claims of immunity . . . should be subject to **prompt appellate review**." *Id*. at 577-78 (emphasis supplied).

King's appeal is taken from orders entered on January 6, 2020, and September 16, 2019, long after the dispositive order of January 26, 2017. These later orders did not serve to invoke or to extend the appellate jurisdiction of this Court. Because we are without jurisdiction to hear this appeal, it must be dismissed.

**Conclusion**

For the foregoing reasons, King's appeal from the orders of the

Jefferson Circuit Court is dismissed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Derek Miles
R. Thad Keal
Michelle Turner
Prospect, Kentucky

BRIEF FOR APPELLEES:

Chadwick N. Gardner
Prospect, Kentucky

F. Larkin Fore
Louisville, Kentucky