THOMPSON, JUDGE:
*538 Robert Caney's wife, Kathleen Caney, filed a complaint against Will Harrod, individually and in his official capacity as Franklin County Coroner, based on his seizure of and subsequent conduct concerning Robert's body after Robert died. Kathleen alleged unlawful invasion of the right of sepulture, and mishandling and mutilation of a corpse; tortious interference with contract; and intentional infliction of emotional distress. Harrod appeals from the Franklin Circuit Court's opinion and order denying his motion to dismiss or for summary judgment based on absolute immunity and qualified immunity.
Harrod is the Franklin County Coroner and the owner, operator and funeral director of Harrod Brothers, a funeral home. As coroner, he conducts post-mortem examinations in coroner's cases.[1]
Robert was previously married to Mary Ann, who predeceased him in 1990. They had three children.
Robert married Kathleen in 1991. On September 11, 2011, Robert signed a durable power of attorney naming Kathleen as his attorney-in-fact and this document was later recorded with the Franklin County Clerk.
In 2013, Robert was diagnosed with Alzheimer's and dementia. In 2014, Robert was diagnosed with terminal cancer. He remained in his home with hospice care provided by Hospice of the Bluegrass.
In 2014, pursuant to her authority as attorney-in-fact, Kathleen signed a preneed cremation authorization form contract with Legacy Crematory, LLC for the future cremation of Robert. She also signed a contract for Robert's funeral and related services with Clark Funeral Homes, Inc.
Robert's and Mary Ann's adult daughter, Jerri Bradshaw, learned that Kathleen planned to have Robert cremated when he died. Jerri contacted Barry Norfleet, who worked for Farmers Bank and Trust Company, the trustee of Robert's trust, for help as she believed such disposition was contrary to Robert's expressed wishes.
Norfleet, apparently representing himself as Robert's trustee, and Jerri then sought help from Harrod. They told Harrod that the documents Kathleen had signed regarding the disposition of Robert's remains did not reflect Robert's wishes and showed him a handwritten undated note Robert signed which stated: "I'm to be buried above Mary Ann. Harrod Brothers Funeral Home. Jerri, with help from Rob & Mike to decide the plans for my funeral." It is undisputed that this note did not meet the legal requirements to be a will or codicil.
In response, Harrod emailed Hospice of the Bluegrass about Robert, stating "I do not permit the release of his bodily remains to any funeral facilities for transport for cremation" and instructed that he be contacted after Robert died so that his office could take possession of the body. Kathleen was not informed about this instruction.
On February 6, 2015, Robert died at home. It is undisputed that he died of natural causes and his death was not a coroner's case.
*539 Within one hour of Robert's death, Harrod, accompanied by a deputy coroner and a deputy sheriff took possession of Robert's body without Kathleen's permission.
Kathleen retained an attorney who demanded the return of Robert's body so that she could carry out her prearranged cremation and burial plans. Harrod refused to release Robert's body until he received direction from a court or written documentation of an agreement between Kathleen and Jerri. In the meantime, he embalmed Robert's body without Kathleen's knowledge or permission, claiming this was necessary to preserve the body.
Through their attorneys, on February 9, 2015, Kathleen and Jerri reached an agreement as to the disposition of Robert's body. They each submitted a written summary of their agreement to Harrod the next day.
The agreement provided Robert's body would be released to the Clark Funeral Home for funeral services and then transferred to Jerri for a funeral service at Harrod Brothers. He would then be buried in the Smith family plot above Mary Ann if the Smith family consented. If not, he would be cremated and buried in the Swigert family plot.
Harrod then released Robert's body to the Clark Funeral Home. After both funerals, Robert's body was buried above Mary Ann.
Kathleen filed a complaint against Harrod in his individual capacity and in his official capacity as coroner. She argued he unlawfully invaded her right of sepulture by denying her common law right to possession of her deceased husband's body, interfered with cremation of Robert's body as authorized by statute based on Robert's preneed authorization, and mishandled and mutilated Robert's corpse by unlawfully seizing it with help from his deputy, transporting it, embalming it and retaining it without legal authority or her consent. She argued Harrod tortiously interfered with the contracts for Robert's cremation and funeral services by seizing his body and forcing her to reach an agreement with Jerri before it could be released, thus preventing the completion of the contracts she signed on Robert's behalf. Finally, she argued Harrod intentionally inflicted emotional distress on her by disregarding her rights as the surviving spouse. Kathleen sought compensatory and punitive damages for Harrod's malicious and intentional conduct.
Harrod filed a motion to dismiss or for summary judgment arguing in his official capacity he had absolute governmental immunity and, in his individual capacity, he had qualified immunity because all his actions were taken in good faith as coroner. He also argued Kathleen's complaint failed to state a cause of action because he acted pursuant to Robert's written instructions, he could not execute a permit authorizing the cremation of Robert's body where it conflicted with his written instructions, he took possession of Robert's body and embalmed it to preserve it while Kathleen and Jerri resolved their dispute and Kathleen ultimately consented to the burial. Furthermore, Kathleen did not allege she suffered a pecuniary loss from the claimed interference with contracts and the power of attorney did not authorize her to sign a preneed authorization for cremation on Robert's behalf. Harrod's actions were taken in accordance with Robert's expressed wishes, which overrode Kathleen's wishes as surviving spouse and negated her claim for intentional infliction of emotional distress.
Following oral argument, the circuit court denied Harrod's motion for summary judgment. The circuit court found there was conflicting evidence regarding whether *540 Harrod's actions were within the scope of his authority, whether he was entitled to qualified immunity and whether the note could override Kathleen's rights. It noted there were additional questions as to whether Harrod was acting in his public capacity as a coroner or his individual capacity as owner and operator of a private funeral home where he did not identify any legal authority allowing him to take possession of the body or to withhold his consent for it to be transported for cremation. The circuit court also stated that Harrod's actions appeared to be contrary to caselaw holding that a surviving spouse in the absence of a different disposition by will has the right to possession of the deceased spouse's body. Because it was unclear whether Harrod was using the power of his office under color of law to advance his personal interest to the detriment of Kathleen's right to have the body cremated, the circuit court stated it could not hold he was entitled to qualified immunity. It determined whether Harrod acted in good faith was a question for the jury.
Harrod filed an interlocutory appeal, arguing the claims against him are barred by absolute immunity and qualified immunity. This appeal is properly before us because an order denying a substantial claim of absolute immunity or qualified official immunity is immediately appealable. Breathitt Cty. Bd. of Educ. v. Prater , 292 S.W.3d 883, 887 (Ky. 2009) ; Mattingly v. Mitchell , 425 S.W.3d 85, 89 (Ky.App. 2013).
The circuit court properly considered Harrod's motion to dismiss or for summary judgment under the summary judgment standard because it considered matters outside of the pleadings. Kentucky Rules of Civil Procedure (CR) 12.02 ; CR 12.03.
Summary judgment should only be granted when "it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." Steelvest, Inc. v. Scansteel Service Center, Inc., 807 S.W.2d 476, 480 (Ky. 1991). In reviewing a ruling on a motion for summary judgment, we must construe the record "in a light most favorable to the party opposing the motion ... and all doubts are to be resolved in his favor." Id.
Harrod argues the claims against him in his official capacity as coroner are barred by absolute immunity because they are claims against Franklin County which has governmental immunity and KRS 72.045 does not waive the coroner's immunity for his own torts. He argues KRS 72.045 only waives immunity for a deputy coroner's torts and because Kathleen did not name a deputy coroner in her complaint or accuse one of any wrongdoing, the claims against Harrod in his official capacity must be dismissed.
When county employees are acting in their representative official capacities, they are cloaked in absolute immunity because an action against them in such capacity is essentially an action against the county which is barred by sovereign immunity. Estate of Clark ex rel. Mitchell v. Daviess Cty ., 105 S.W.3d 841, 844 (Ky.App. 2003). Sovereign immunity is partially waived with respect to the actions of deputy coroners, but not with respect to the coroner, in KRS 72.045 which provides as follows:
The office of coroner, rather than the individual holder of the office, shall be liable for the acts or omissions of deputy coroners. When a deputy coroner omits to act or acts in such a way as to render the coroner responsible, and the coroner discharges such responsibility, the deputy shall be liable to the coroner for all damages and costs caused by the deputy's act or omission.
*541 While KRS 72.045 has not been interpreted by the courts, cases interpreting KRS 70.040, which is an equivalent provision regarding the liability of the office of the sheriff and deputies, are persuasive.[2]
"[A]bsent a waiver thereof, a sheriff, as a county official, has absolute official immunity at common law for torts (by him or his deputies) when sued in his official capacity." Jones v. Cross , 260 S.W.3d 343, 345 (Ky. 2008). KRS 70.040 provides a limited waiver of "the sheriff's official immunity (the office of sheriff) for the tortious acts or omissions of his deputies." Jones , 260 S.W.3d at 346. Because there is no waiver of the official immunity of the sheriff for the sheriff's official actions under KRS 70.040, there is also no waiver of the official immunity of the coroner for the coroner's official actions under KRS 72.045.
However, Kathleen is not arguing that Harrod is liable in his official capacity as coroner for his own actions, but that his office is liable for the deputy coroner assisting Harrod in removing Robert's body from her house. Kathleen states a sufficient claim to preclude the grant of summary judgment. She did not need to name the deputy coroner as a defendant as she is not asserting a claim against the deputy coroner in an individual capacity but asserting a claim against Harrod in his official capacity based on the acts of his deputy. Therefore, the circuit court was correct to deny Harrod's assertion of official immunity because under the statutory waiver of absolute immunity for actions of deputy coroners, the office of the coroner can be liable for the deputy coroner's actions.
Harrod argues the claims against him in his individual capacity are barred by qualified immunity where he acted within the scope of his authority in good faith as authorized by KRS 213.081(1) and the common law to possess and preserve Robert's body pending resolution of a dispute between Kathleen and Jerri regarding the disposition of his body. Harrod argues he could not issue a permit for Robert's body to be transported for cremation once he knew doing so would be contrary to Robert's expressed written wishes and for health reasons he could not allow Robert's body to remain in the house pending resolution by the family. His only option was to take possession of the body and preserve it until the family resolved the matter.
Coroners are entitled to qualified immunity both by statute and pursuant to common law. Qualified immunity is provided for a coroner under KRS 72.470 which states as follows: "Any coroner, deputy coroner or designee thereof, acting in good faith within the scope of his official duties, shall have immunity from any civil liability that might otherwise be incurred or imposed."
The Court in Yanero v. Davis , 65 S.W.3d 510, 522 (Ky. 2001) (internal citation omitted), defined qualified immunity as follows: "Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." Qualified official immunity protects officials "for *542 good faith judgment calls made in a legally uncertain environment" thus absolving them from liability for "bad guesses in gray areas" and protects "all but the plainly incompetent or those who knowingly violate the law." Rowan Cty. v. Sloas , 201 S.W.3d 469, 475 (Ky. 2006) (quoting Yanero , 65 S.W.3d at 522 ; Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) ; and Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) ).
"[O]nce the material facts are resolved, whether a particular defendant is protected by [qualified] official immunity is a question of law[.]" Id. The converse is also true, if material factual issues remain, it cannot be determined whether a particular defendant is protected by qualified official immunity at the summary judgment stage.
In Kentucky "there is a legal right in the bodies of the dead, which the courts will recognize and protect by the proper action[.]" Hockenhammer v. Lexington & E. Ry. Co. , 74 S.W. 222, 224 (Ky. 1903). To be lawful, a coroner's actions with respect to the bodies of the deceased must be authorized by law or by the person entitled to determine the disposition of the decedent's body. See Streipe v. Liberty Mut. Ins. Co. , 243 Ky. 15, 47 S.W.2d 1004, 1005-06 (1932) (holding coroner had no authority to order an autopsy in a non-coroner's case at the request of an insurance company where the autopsy was not authorized by the decedent's spouse); Meyers v. Clarke , 122 Ky. 866, 90 S.W. 1049, 1050-51 (1906) (holding in a case involving a claim that the decedent was disfigured by an unauthorized autopsy, that jury instructions were proper which allowed acquittal if the jury found the doctors performed the autopsy decently without unnecessary incisions and in good faith for the appropriate purpose of ascertaining the cause of the death so that a death certificate might be given as required for issuance of a burial permit).
The only statutory authority Harrod identifies as authorizing his actions with regards to Robert's body is KRS 213.081(1), which provides as follows:
No person shall cremate or cause to be transported for the purpose of cremation the body of any person whose death occurs in the Commonwealth, without first obtaining from the coroner of the county in which the death occurred, a permit stating the cause of death and authorizing the cremation or transportation for cremation of the body. The permit shall be filed immediately following cremation with the local registrar of vital statistics.
This provision prevents the cremation of a decedent in a coroner's case, under any of the enumerated circumstances provided in KRS 72.025 in which a coroner shall require a post-mortem examination. The requirement that a permit be obtained from the coroner prior to cremation or transportation for cremation prevents evidence of a suspicious or unexplained death that may be present in the body of the deceased from being destroyed through cremation, since a buried body may later be exhumed for examination pursuant to KRS 72.440. Because KRS 213.081(1) is aimed at preventing concealment of a crime, it is appropriate that cremation of a body or transportation of a body for cremation without the coroner's consent constitutes a class D felony under KRS 213.991(1).
KRS 213.081(1) does not authorize a coroner to interfere in a dispute between family members as to the disposition of a relative's remains and whether cremation should take place. There is also no statute that authorizes a coroner to embalm a body.
*543 Harrod argues he was also authorized by common law to intervene so that Robert's wishes as expressed in his note would be fulfilled, because the case of Haney v. Stamper , 277 Ky. 1, 125 S.W.2d 761, 762 (1939) (emphasis added), stated: "It is settled that, in the absence of the expressed wishes of the deceased , the surviving spouse, where the parties have been living in the normal relations of marriage, has the paramount right not only to the custody of the dead body, but also to determine the time, manner, and place of burial." Harrod also cites to the version of KRS 367.97527(2) (emphasis added) in effect at the time of Harrod's death which provides that "[i]n the event that no different or inconsistent instructions are provided to the crematory authority at the time of death, the crematory authority shall release or dispose of the cremated remains as indicated in the preneed agreement" as supporting his actions based on Robert's note.
However, these authorities provide only weak support for Harrod's actions. Harrod's selective quotation from Haney summarized a well-established proposition and did not decide how the expressed wishes of the deceased could be established and what, if any, documents besides a will would suffice. Neither Haney nor former KRS 367.97527(2) grants a coroner authority to enforce a decedent's wishes.
Cases both before and after Haney , stressed that unless a different disposition is made by will, a surviving spouse has first priority to determine what will happen to a decedent's body. Hazelwood v. Stokes , 483 S.W.2d 576, 577 (Ky. 1972) ; Streipe , 47 S.W.2d at 1005. Haney , 125 S.W.2d at 762, itself explained that a surviving spouse's rights are paramount:
The right of the surviving spouse to prescribe the time and manner of burial necessarily excludes the rights of others even though they be the next of kin. The two rights cannot occupy the same space at the same time; and, unless the right of the surviving spouse is to be deemed wholly illusory, it must be exclusive.
The surviving spouse has the right to immediate possession of the body and the right to transport it without a license. Reynolds Enterprises, Inc. v. Kentucky Bd. of Embalmers & Funeral Directors , 382 S.W.3d 47, 52 (Ky.App. 2012).
When Robert died under the then applicable version of KRS 367.97501(1)(a)[3] the priority for the disposition of his body was first to be determined by his preneed cremation *544 authorization. The next class of authorizing agent was "[t]he surviving spouse of the decedent" followed by "[t]he surviving adult children of the decedent[.]" Id. at (1)(b)-(c).
The then applicable version of KRS 367.97527(1) provided that a preneed cremation authorization could be made by "[a] person, or anyone who has legal authority to act on behalf of that person" to authorize cremation and final disposition. This provision authorized someone acting under a proper power of attorney to agree to a preneed cremation authorization on that person's behalf. The preneed cremation authorization Kathleen signed pursuant to the power of attorney Robert granted to her is considered an expression of Robert's wishes and should be given precedence over the undated note he signed. However, even if the power of attorney did not authorize Kathleen to sign the preneed cremation authorization on Robert's behalf, her authority as Robert's surviving spouse was still superior to that of Jerri and Robert's note is an insufficient expression of his wishes.
Instead of resting with the coroner, the onus for preventing unauthorized cremations rests on crematory authorities. There is a statutory duty for crematory authorities not to perform unauthorized cremations as specified in KRS 367.97524(1) and former KRS 367.97527(3). KRS 367.97524(1) provides that "[a] crematory authority shall not conduct any cremations, nor accept a body for cremation, unless it has a cremation authorization form signed by the authorizing agent clearly stating the disposition to be made of the cremated remains."
Former KRS 347.97527(3) provided that:
In the event that there is a conflict between the decedent's prearrangement and the demands of the next class of authorizing agent in the order set forth in KRS 367.97501(1) regarding cremation, the crematory shall not accept for cremation those human remains without an order deciding the issues entered by the District Court of the county of the decedent's residence or the county where the funeral home or the crematory authority is located. This order may be issued by the court after a petition for resolution has been initiated by any natural person listed in KRS 367.97501(1) or the crematory authority. Unless extraordinary circumstances exist, the court shall give due deference to the desires of the deceased as expressed in the prearrangement.
While the coroner has an interest in the bodies of the dead if it is a coroner's case, if it is not a coroner's case, the coroner lacks any interest. We agree with Kathleen that KRS 213.081(1) only provides Harrod with the authority to either issue or not issue a permit for cremation. Regardless of whether Harrod believed Robert's wishes as memorialized in the note should have been followed instead of the preneed cremation authorization or Kathleen's wishes as the surviving spouse, there is no authority to support Harrod's decision to seize Robert's body and force his relatives to reach an agreement about its disposition.
While Harrod need not be correct that his actions were authorized by law to be protected by qualified immunity, the parties' differing interpretations of the motivations behind Harrod's actions shows disputed issues of fact that cannot be resolved on summary judgment. A jury could believe Harrod was acting properly within the scope of his perceived duties as coroner where he believed he should enforce Robert's wishes and believed he had the legal authority to do so, or that he knew he was acting beyond the scope of his office but used the authority of his *545 office to seize Robert's body to benefit his pecuniary interest as the owner of Harrod Brothers.
Accordingly, the Franklin Circuit Court acted properly in denying Harrod's motion for summary judgment in its opinion and order because there were unresolved questions of fact.
ALL CONCUR.

Kentucky Revised Statutes (KRS) 72.405(2) defines a "coroner's case" as "a case in which the coroner has reasonable cause for believing that the death of a human being within his county was caused by any of the conditions set forth in KRS 72.025 [.]" KRS 72.025 provides nineteen enumerated circumstances in which a post-mortem examination is required.

KRS 70.040 provides as follows:
The sheriff shall be liable for the acts or omissions of his deputies; except that, the office of sheriff, and not the individual holder thereof, shall be liable under this section. When a deputy sheriff omits to act or acts in such a way as to render his principal responsible, and the latter discharges such responsibility, the deputy shall be liable to the principal for all damages and costs which are caused by the deputy's act or omission.

In 2016 Kentucky Laws Ch. 59 (SB 103), added several new sections to KRS Chapter 367 regarding funeral planning which became effective on July 15, 2016. KRS 367.93101 ; KRS 367.93103 ; KRS 367.93105 ; KRS 367.93107 ; KRS 367.93109 ; KRS 367.93111 ; KRS 367.93113 ; KRS 367.93115 ; KRS 367.93117 ; KRS 367.93119 ; KRS 367.93121. Pursuant to KRS 367.93103, a specific format was adopted for a funeral planning declaration in which a person could either determine what would happen to his or her body after death or to designate another person to make such decisions, with such declaration taking precedence over other family members' wishes. Such declarations must be signed in the presence of two witnesses and notarized, thus having the formality of a will. Id. Under KRS 367.93117, the wishes of the decedent stated in the funeral planning declaration as executed by a designee are paramount, but in their absence the surviving spouse has precedence over the adult children of the decedent. SB 103 also amended existing sections of Chapter 367 to replace preneed agreements with funeral planning declarations, including KRS 367.97527. While in the former KRS 367.97501, the order of who decides is the same, with a preneed cremation authorization being paramount, a preneed cremation authorization under KRS 367.97527(1) could be entered on behalf of another if properly authorized. In contrast, a funeral planning declaration under KRS 367.93103 does not provide a basis for anyone else to act on the declarant's behalf.