RENDERED: OCTOBER 28, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0741-MR

HARVEY PELFREY,
INDIVIDUALLY; AND UNKNOWN
AGENT EMPLOYEES OF THREE
FORKS REGIONAL JAIL, IN THEIR
INDIVIDUAL CAPACITIES                                        APPELLANTS


                        APPEAL FROM LEE CIRCUIT COURT
v.                      HONORABLE MICHAEL DEAN, JUDGE
                        ACTION NO. 20-CI-00035


KIMBERLY HUGHES, AS CO-
ADMINISTRATOR OF THE ESTATE
OF CLYDE SMITH, JR.; AND
JENNIFER SMITH, AS CO-
ADMINISTRATOR OF THE ESTATE
OF CLYDE SMITH, JR.                                          APPELLEES


                              OPINION
                         AFFIRMING IN PART
                       AND REVERSING IN PART

                         ** ** ** ** **

BEFORE: GOODWINE, MAZE, AND McNEILL, JUDGES.

MCNEILL, JUDGE: Harvey Pelfrey ("Pelfrey") and unknown employees of the Three Forks Regional Jail ("jail employees") appeal from the Lee Circuit Court's order denying their motion for summary judgment, finding they are not entitled to qualified official immunity. We affirm in part and reverse in part.

On March 11, 2018, Clyde Smith, Jr. ("Smith") was arrested on suspicion of driving under the influence of marijuana and brought to Three Forks Regional Jail ("jail") around 5:00 p.m. At 55 years old, Smith suffered from respiratory and heart conditions which required access to an oxygen tank and regular medication. Smith arrived at the jail with a bag of medications, which were collected and logged by the jail employees. He was also asked a series of medical questions as part of the jail's standard intake process.

Jail employees noted that Smith was drowsy, had slurred speech, and had a hard time staying focused during the interview. Smith explained that he had smoked marijuana earlier that day on the advice of his doctor. When asked whether he had taken too many drugs, Smith said he had only taken what was prescribed. Smith answered no to most of the medical questions but did say yes when asked if he was taking medication for diabetes, heart disease, seizures, asthma, and/or arthritis. Afterwards, Smith was placed in a cell to "sober up."

Around 6:50 p.m., Smith's daughter, Kimberly Hughes, called the jail and advised the answering employee of Smith's medical issues, including that

Smith had chronic obstructive pulmonary disease (COPD) and needed access to supplemental oxygen. She called again forty minutes later and informed the answering employee that Smith was diabetic. It does not appear that any action was taken in response to these phone calls.

Jail employees did visual checks on Smith throughout the evening which were recorded in the jail's Booking Cell Log. The first twelve entries, from around 6:00 p.m. to 12:00 a.m., note that Smith was observed "laying." It is unclear from the record whether jail employees did anything to confirm that Smith was conscious during this period. At around 12:30 a.m., Smith was found unresponsive and died shortly thereafter. According to the medical examiner, Smith died from atherosclerotic and hypertensive cardiovascular disease. However, the estate's expert witness testified via deposition that the underlying cause of death was a lack of oxygen.

On September 23, 2019, Smith's estate ("estate") filed a wrongful death suit in Breathitt Circuit Court, which was later transferred to Lee Circuit Court,[1] against Pelfrey and the jail employees.[2] Following discovery, Pelfrey and the jail employees moved for summary judgment, arguing that the estate's claims

---

[1] Three Forks Regional Jail is in Lee County.

[2] An amended complaint was filed on December 13, 2019, naming Pelfrey and the jail employees in their individual capacities only.

against them were barred by qualified official immunity. The trial court denied the motion, finding that "the duty to provide inmates with medical care is not discretionary, but is mandatory, and therefore ministerial." The court went on to hold that "there are genuine issues of material fact whether Jail employees violated Jail policies and procedures and applicable laws and whether they violated their duty to provide reasonable and necessary medical treatment to Clyde Smith, Jr." This appeal followed.

The sole issue on appeal is whether the trial court erred in holding that Pelfrey and the jail employees are not entitled to immunity. While an order denying summary judgment is typically not appealable, an order denying a claim of immunity is subject to immediate appeal. *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886-87 (Ky. 2009). Whether an individual is entitled to qualified official immunity is a question of law reviewed *de novo*. *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006).

Whether a government officer or employee is entitled to qualified official immunity depends on whether their acts were discretionary or ministerial. Qualified official immunity only applies to the negligent performance of a discretionary act. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Discretionary acts involve "the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id.* Conversely, a ministerial act is "one that requires

-4-

only obedience to the orders of others, or when [a] duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.*

However, in reality, "few acts are ever purely discretionary or purely ministerial." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010). Therefore, "our analysis looks for the *dominant* nature of the act." *Id.* "That a necessity may exist for the ascertainment of those [fixed and designated] facts does not operate to convert the [ministerial] act into one discretionary in its nature." *Upchurch v. Clinton Cnty.*, 330 S.W.2d 428, 430 (Ky. 1959) (citation omitted). Similarly, "an act is not necessarily taken out of the class styled 'ministerial' because the officer performing it is vested with a discretion respecting the means or method to be employed." *Id.* (citation omitted).

To determine whether Pelfrey and the jail employees are entitled to immunity, we must first classify "the particular acts or functions in question" as either discretionary or ministerial. *Haney*, 311 S.W.3d at 240. We begin with the acts of the jail employees. The estate's allegations can be divided into actions at the time of Smith's booking and actions following Hughes' telephone call to the jail.

As to the booking employees, the estate's expert witness, Jeff Eiser, testified that the booking employees were negligent in failing to notify medical

when Smith told them of his various medical conditions. However, Eiser conceded that the jail medical screening form did not require jail employees to contact medical under the facts of this case and the estate has not alleged any jail policy or law mandating they do so. Therefore, the booking employees' decision to not contact medical was discretionary.

"Under *Yanero*, public officers and employees are entitled to 'qualified official immunity' for negligent conduct when the negligent act or omissions were (1) discretionary acts or functions, that (2) were made in good faith (*i.e.* were not made in 'bad faith'), and (3) were within the scope of the employee's authority." *Rowan Cnty.*, 201 S.W.3d at 475 (citing *Yanero*, 65 S.W.3d at 522). "Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523. Here, the estate has not presented evidence or specific argument that the booking employee's discretionary decision was in bad faith. Therefore, summary judgment should have been granted on the issue of immunity as to this act.

As to actions following Hughes' telephone call to the jail, the estate alleges the jail employees were negligent in (1) failing to provide an oxygen tank to Smith after being put on notice of Smith's feeble condition and (2) violating

-6-

Kentucky Administrative Regulations requiring jails to provide necessary medical services to inmates. Specifically, the estate points to 501 KAR[3] 3:140 § 8, which mandates that "[e]ach prisoner shall be afforded access to necessary medical care." Similarly, the jail's policies and procedures manual states that "[e]mergency medical . . . care shall be available at all times to all inmates[.]"

Traditionally, under Kentucky law, providing medical care has been deemed a ministerial duty. *See Gould v. O'Bannon*, 770 S.W.2d 220, 221-22 (Ky. 1989) ("The administration of medical care is a ministerial function by employees, including doctors."). The jail employees argue, however, that while the duty to provide medical care is ministerial, the determination of whether medical care is required is discretionary. They contend that Hughes' phone call did not trigger a ministerial duty to provide oxygen because "no regulation or [jail] policy requires an officer to take specific action based on information received from a third party regarding an inmate."

First, it should be noted that "the duty compelling the performance of a ministerial act need not spring from a specific statute, administrative regulation, or formal policy statement or protocol." *Gaither v. Justice & Pub. Safety Cabinet*, 447 S.W.3d 628, 635 (Ky. 2014) (citation omitted). Here, regulations and jail policy require that emergency medical care be provided to jail inmates. The jail's

---

[3] Kentucky Administrative Regulations.

policies and procedures manual lists both unconsciousness and serious breathing difficulties as emergencies. Therefore, if jail employees know or should know that an inmate has serious breathing difficulties or is unconscious, they have a ministerial duty to render emergency medical care.

Here, there is evidence the jail employees had notice that Smith needed supplemental oxygen. After receiving this information, they observed him "laying" in the cell from 6 p.m. to 12 a.m. during their visual surveillance checks. The record is unclear whether the jail employees did anything to confirm if he was conscious or breathing during this time. Therefore, issues of fact remain as to whether the jail employees knew or should have known that Smith needed medical care.

Further, 501 KAR 3:060 § 1(3)(g) requires jails to develop written policies and procedures governing surveillance checks. While parts of the jail's policies and procedures manual is in the record, the section pertaining to surveillance, if it exists, is not. If verifying consciousness or breathing during surveillance checks was part of jail policy, the jail employees would have a ministerial duty to do so.

The trial court correctly held that genuine issues of material fact remain as to whether the jail employees violated jail policies and procedures and applicable laws and whether they violated their duty to provide reasonable and

necessary medical care to Smith. *See Harrod v. Caney*, 547 S.W.3d 536, 542 (Ky. App. 2018) (internal quotation marks and citation omitted) ("[I]f material factual issues remain, it cannot be determined whether a particular defendant is protected by qualified official immunity at the summary judgment stage."). Accordingly, we hold that the trial court did not err as a matter of law in denying the jail employees' motion for summary judgment as to qualified official immunity.

Next, we turn to the acts of Pelfrey. The estate alleges that he was negligent in creating a policy that oxygen would only be provided if it was provided by another inmate. Relatedly, the estate's expert witness, Jeff Eiser, also criticized Pelfrey for failing to have a jail policy informing employees when and in what circumstances to contact medical. However, there is no evidence the jail had a policy that oxygen could *only* be provided to an inmate by another inmate. Further, "rule-making is an inherently discretionary function." *Yanero*, 65 S.W.3d at 529 (citation omitted). Therefore, Pelfrey's decisions as to policy, when not mandated by law, were discretionary.

As noted above, "[o]nce the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Id.* at 523. Here, the estate has not presented evidence or specific argument that Pelfrey's policy

decisions were in bad faith. Therefore, Pelfrey is entitled to qualified official immunity as to these acts.

The estate also alleges that Pelfrey failed to properly supervise and instruct the jail employees in the jail's policies. A jail administrator's duty to supervise and train his employees on jail policies and procedures is ministerial. *See Hedgepath v. Pelphrey*, 520 F. App'x 385, 391-92 (6th Cir. 2013) (citing *Yanero*, 65 S.W.3d at 522, 529). Although this argument is somewhat undeveloped, there is evidence in the record that jail employees were confused as to the availability of and process for administering oxygen to inmates.

Pelfrey testified that the jail has three canisters of oxygen available for inmates who need oxygen. However, according to Hughes, when she called the jail, an employee told her the jail did not keep oxygen on site and that it had to be provided by the family or could be borrowed from another inmate. Therefore, there are issues of fact precluding summary judgment as to whether Pelfrey violated his ministerial duty to properly train and supervise his employees and the trial court did not err in denying Pelfrey's motion for summary judgment as to this issue.

Based on the foregoing, the Lee Circuit Court's order denying summary judgment on the issue of qualified official immunity is affirmed in part and reversed in part. Issues of fact preclude summary judgment as to whether

Pelfrey violated a ministerial duty to train and supervise jail employees and whether the employees violated jail policies and procedures, applicable laws, or their duty to provide reasonable and necessary medical care to Smith. Therefore, we affirm the trial court's denial of summary judgment as to these issues. However, the jail employees were entitled to qualified official immunity for their discretionary decision to not contact medical at the time of Smith's booking and Pelfrey was entitled to qualified official immunity for his discretionary policy decisions. Accordingly, we reverse the court's order denying summary judgment as to these issues and remand with instructions to enter summary judgment in favor of the jail employees and Pelfrey.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Andrew D. DeSimone
L. Scott Miller
Maureen C. Malles
Lexington, Kentucky

BRIEF FOR APPELLEES:

Ned Pillersdorf
James Tanner Hesterberg
Prestonsburg, Kentucky