RENDERED: AUGUST 18, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1145-MR

BELL COUNTY OFFICE OF JAILER;
GARY FERGUSON, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS
BELL COUNTY JAILER; TERESA
LEFEVER, INDIVIDUALLY AND IN
HER OFFICIAL CAPACITY AS AN
EMPLOYEE OF THE BELL COUNTY
DETENTION CENTER; AND JASON
MILLER, INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITY AS BELL
COUNTY DEPUTY JAILER                                          APPELLANTS


                    APPEAL FROM BELL CIRCUIT COURT
v.            HONORABLE ROBERT V. COSTANZO, JUDGE
                        ACTION NO. 17-CI-00388


NICK J. EPPS                                                      APPELLEE



                    OPINION AND ORDER
                        DISMISSING

                        ** ** ** ** **

BEFORE: CALDWELL, COMBS, AND KAREM, JUDGES.

KAREM, JUDGE:  The Bell County Office of Jailer; Gary Ferguson, individually and in his official capacity as the Bell County Jailer; Teresa Lefever,[1] individually and in her official capacity as an employee of the Bell County Detention Center; and Jason Miller, individually and in his official capacity as a Bell County Deputy Jailer bring this interlocutory appeal from a Bell Circuit Court order denying their motion for summary judgment.  The suit against them was brought by Nick J. Epps, an inmate whose stroke was untreated for several hours while he was incarcerated at the Bell County Detention Center.  Epps brought state and federal claims against the appellants, alleging that they failed to follow state regulations and jail policies which require inmates to be checked regularly and violated his constitutional rights.  Because the trial court's order held that material issues of fact remained as to whether Ferguson and Miller were entitled to qualified immunity, its judgment as to this issue is not final and we are without jurisdiction to hear this appeal.

**Factual and Procedural Background**

On the morning of November 23, 2016, Epps was pulled over by two city policemen in Middlesboro, Kentucky for driving erratically.  The officers administered several field sobriety tests, which Epps failed.  He was arrested at

[1] This appellant's surname is spelled inconsistently throughout the record and pleadings.  We have adopted the spelling "Lefever" used in the Notice of Appeal.

9:32 a.m. and taken to Middlesboro ARH Hospital, where he consented to a blood draw for an alcohol and drug screen.

At around 10:30 a.m., Epps was booked into the Bell County Detention Center in Pineville, Kentucky. A supervisor at the jail described Epps as appearing intoxicated and unsteady on his feet. The jail records show that a deputy jailer named Annie Nierengarten was Epps's booking officer, but she denied this. According to the depositions of the staff who were on duty that day, the identity of his booking officer is unclear.

Because he was charged with driving under the influence, Epps was placed in the detox cell. The jail employees explained that an inmate brought in on drug or alcohol charges would have a "detox sheet." A guard was required to check the inmate every 20 to 30 minutes and record it on the detox sheet. The guard was also required to note any changes in the inmate's condition and contact medical personnel if his condition deteriorated. A control log was used to record the identity of the guard performing the checks and to record each time a check was performed. No detox sheet was found for Epps nor were there any checks on him recorded in the control log.

At approximately 4:00 p.m. that afternoon, a jail deputy saw another inmate in the detox cell flagging the camera to get the control room's attention. The deputy found Epps lying on his mat, vomiting. Ferguson, the Jailer, who had

no direct contact with Epps while he was at the jail, received a phone call from the jail staff who told him that Epps was ill and would need to be transported to the hospital. He agreed and told them to go ahead without waiting for an ambulance. Epps was admitted to the Pineville Community Hospital and then airlifted to the University of Kentucky Hospital. He was diagnosed with an intraventricular cerebral hemorrhage or stroke from which he did not fully recover. Epps, who was 54 years of age when he suffered the stroke, will require full-time care for the rest of his life.

The lab results from the blood draw at the hospital following his arrest show that Epps was not under the influence of drugs or alcohol. According to Epps, the symptoms of drug or alcohol impairment he exhibited were due to the massive stroke he was suffering. Epps retained a medical expert who opined that his symptoms would have worsened throughout the day, which is inconsistent with impairment from intoxication, and the failure of the jail personnel to check on him for over six hours delayed his treatment and hampered his recovery.

Epps filed suit in Bell Circuit Court, naming multiple defendants, including the City of Middlesboro; the Middlesboro Police Department and the individual police officers who pulled him over; the Middlesboro ARH Hospital and one of its employees; and the defendants associated with the Bell County Detention Center, comprising the "Bell County Office of Jailer," and the Bell

County Jailer, Gary Ferguson; and five jail employees: Teresa Lefever; Deputy Jailers Annie Nierengarten, Jason Miller, and Jerry Allen; and Michelle Hurt, a nurse practitioner.

In regard to the Bell County Detention Center defendants, the complaint asserted state law claims of negligence, failure to train and supervise, and failure to promulgate policies and procedures relevant to inmate care. It also asserted a claim pursuant to 42 United States Code (U.S.C.) § 1983, alleging that the Bell County defendants had demonstrated deliberate indifference to the symptoms of Epps's stroke while he was incarcerated, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Epps alleged that in the six and one-half hours which elapsed from the time he was placed in the detox cell and the time he was discovered lying on his mat vomiting, there is not a single record showing he was checked by jail personnel, despite multiple witnesses admitting he was supposed to be checked and the check was meant to be recorded in two separate logs.

Epps argued that the jail personnel failed to follow internal jail policies as well as various Kentucky Administrative Regulations (KAR) which are promulgated by the Department of Corrections pursuant to Kentucky Revised Statutes (KRS) 441.055. 501 KAR 3:090 § 1(9) requires medical screenings of prisoners at the time of their admission and 501 KAR 3:060 § 2(2) governs

-5-

surveillance procedures for inmates in detox cell. Epps also contended that the Jailer, Ferguson, failed to train his staff to observe the appropriate policies and procedures.

After lengthy discovery, Epps agreed to dismiss his claims against one of the Middlesboro deputies; the City of Middlesboro; and the Middlesboro ARH hospital and its employee.

The remaining defendants moved for summary judgment. Following a hearing, the circuit court dismissed all claims against the remaining Middlesboro police officer and the City of Middlesboro. It further found that Jerry Allen and Annie Nierengarten were entitled to qualified immunity in their individual and official capacities and ordered all claims against them dismissed with prejudice. The order concluded by stating that the motions for summary judgment of the remaining defendants were overruled.

The remaining Bell County defendants filed a motion to alter, amend, or vacate, seeking clarification as to the identity of the remaining defendants and the basis for denying their motion for summary judgment. In regard to the availability of immunity, the motion states: "Though not explicit in the order, it is assumed the Court found that there was a material question of fact as to whether the remaining parties were entitled to qualified immunity and that there is evidence of record to support claims against these same parties in their official capacity."

Following a hearing, the circuit court issued an order in response to the motion which stated in relevant part as follows:

> This Court finds that there are material issues of fact as to whether the Bell County Office of Jails acted with deliberate indifference toward Plaintiff Nick Epps along with Gary Ferguson, both individually and in his official capacity, as well as Teresa Lefevers both individually and in her official capacity, and Jason Miller both individually and in his official capacity.
>
> The Court further finds that there are material issues of fact as to whether these Defendants are entitled to the protections of qualified immunity, both individually and in their official capacities.
>
> This appeal followed.

## Analysis

As a preliminary matter, we note that Epps's response to the motion for summary judgment stated that the claims against Lefever could be dismissed because she had no involvement with, or responsibility for, his supervision or care while he was at the jail. The response also asserted that the state law claims against all the Bell County defendants in their official capacities were barred by sovereign immunity because they are claims against Bell County. Therefore, the only remaining claims to be addressed in this appeal are the availability of immunity for (1) the state law claims brought against Miller and Ferguson in their individual capacities; and (2) the federal law claims brought against Miller and Ferguson, individually and officially.

"Typically, only final judgments are appealable." *Upper Pond Creek Volunteer Fire Department, Inc. v. Kinser*, 617 S.W.3d 328, 333 (Ky. 2020) (citing Kentucky Rules of Civil Procedure (CR) 54.01). "But in rare cases, Kentucky affords a party the opportunity to appeal certain issues in a case before final judgment has been issued, termed an interlocutory appeal." *Baker v. Fields*, 543 S.W.3d 575, 577 (Ky. 2018). An immediate interlocutory appeal may be taken from "an order denying a substantial claim of absolute immunity or qualified official immunity[.]" *Harrod v. Caney*, 547 S.W.3d 536, 540 (Ky. App. 2018). The scope of our review in this type of appeal is strictly limited. "[A]n appellate court reviewing an interlocutory appeal of a trial court's determination of a defendant's immunity from suit is limited to the specific issue of whether immunity was properly denied, nothing more." *Baker*, 543 S.W.3d at 578.

The Kentucky Supreme Court recently cautioned, however, that "a trial court's order is not immediately appealable simply because immunity is at issue." *Kinser*, 617 S.W.3d at 333. "If the trial court's decision leaves the immunity question unresolved, that order is not immediately appealable." *Id.* To illustrate this point, *Kinser* cited a Court of Appeals opinion, *Chen v. Lowe*, 521 S.W.3d 587 (Ky. App. 2017), which involved a former student suing a dean in his individual and official capacities. The dean filed a motion to dismiss the suit on the basis of qualified official immunity. The trial court denied the motion, finding

-8-

that genuine issues of material fact remained regarding the dean's entitlement to qualified immunity. The Court of Appeals held that the appeal must be dismissed, because

> [i]n denying [the dean's] motion to dismiss . . . the circuit court did not make a final ruling on the issue of qualified immunity. Rather, the court found that there were disputed issues of material fact regarding [the dean's] entitlement to qualified immunity. Therefore, the issue of [the dean's] immunity remains unresolved, and the order denying his motion to dismiss is not immediately appealable.

*Kinser*, 617 S.W.3d at 334 (quoting *Chen*, 521 S.W.3d at 590-91).

A great deal of discovery has already occurred in the case at bar, including depositions of all the defendants, which presumably would have provided the court with an adequate factual basis for undertaking the analysis required to determine the availability of immunity. In this way, the case differs significantly from *Kinser*, in which the record was not highly developed. *Kinser* at 335. But "[a] court speaks only through its written orders[.]" *Sidebottom v. Watershed Equine, LLC*, 564 S.W.3d 331, 334 (Ky. App. 2018). The Bell Circuit Court's order plainly states that material issues of fact remain as to whether the defendants are entitled to qualified immunity. We must follow the directive of the *Kinser* Court not to "undertake a fact-finding mission to resolve questions that the circuit court has not yet fully addressed." *Kinser*, 617 S.W.3d at 335. When, as in

this case, an order is interlocutory rather than final, an appellate court is without the jurisdiction necessary to review the order. *Id.* at 333.

### **Conclusion**

For the foregoing reasons, this appeal is dismissed for lack of jurisdiction.

ALL CONCUR.

ENTERED: _____       _____
                                        JUDGE, COURT OF APPEALS

BRIEFS FOR APPELLANT:                    BRIEF FOR APPELLEE:

Jason E. Williams                        Adrian Mendiondo
John F. Kelley, Jr.                      Lexington, Kentucky
London, Kentucky