RENDERED:  MARCH 8, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1330-MR

KRISTIAN BROCK AND
CHRISTOPHER STONE                                                APPELLANTS


                    APPEAL FROM HENRY CIRCUIT COURT
v.            HONORABLE JERRY D. CROSBY, II, JUDGE
                    ACTION NO. 18-CI-00164


COLTON T. HINKEL,
INDIVIDUALLY AND AS
ADMINISTRATOR OF THE ESTATE
OF CHARLES L. HINKEL, III                                          APPELLEE


                            OPINION
                            AFFIRMING

                        ** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND KAREM, JUDGES.

KAREM, JUDGE:  Kristian Brock and Christopher Stone appeal from a Henry

Circuit Court order granting in part and denying in part their motion for summary

judgment.  Brock, an EMT, and Stone, a paramedic, were employees of Henry

County Emergency Medical Services ("Henry County EMS"). They were sued in their official and individual capacities for alleged negligence in providing emergency medical services to a patient who suffered a fatal heart attack. The trial court held that Brock and Stone were not entitled to qualified official immunity for claims relating to (1) their use of a cell phone application ("app") to navigate to the patient's home and (2) their alleged failure to perform a routine check of the defibrillator in their ambulance. Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Charles L. "Luke" Hinkel, III awoke in the early morning hours of September 14, 2017, experiencing severe chest pain. He was forty-eight years of age and had previously suffered a heart attack. He called his son, Zachary, who lived about a mile away. Zachary came to Hinkel's home and called 911 about thirty minutes later, at 2:08 a.m. Brock and Stone were dispatched to pick up Hinkel. They used Active 911, a GPS navigation app on a cell phone, to guide them to Hinkel's residence, approximately 3.8 miles from their station. The app misdirected them, and they had trouble locating the house, a difficulty exacerbated by the dark and rainy conditions. They arrived about sixteen minutes after they departed from the ambulance bay.

They found Hinkel lying on the floor experiencing extreme pain in the center of his chest. Because Hinkel's home was difficult to access with a stretcher,

Brock and Stone asked if he would be able to get up and walk to the ambulance. He agreed and walked out to the ambulance with their assistance. After he got into the ambulance, he went into full cardiac arrest. Stone attempted to defibrillate Hinkel with the LifePak 12 defibrillator with which the ambulance was equipped, but the monitor on the device failed. Stone attempted to restart the LifePak several times without success. He then began CPR, intubated Hinkel, and administered lidocaine and epinephrine. They contacted another paramedic with a functioning defibrillator who met them on their way to the hospital. They unsuccessfully attempted to defibrillate Hinkel. They arrived at the hospital and transferred Hinkel at 3:18 a.m. Hinkel passed away at 3:31 a.m.

On September 14, 2018, Zachary S. Hinkel as Administrator of the Estate of Charles L. "Luke" Hinkel, III, and Kimberly Hinkel, as Mother and next Friend of Colton T. Hinkel (Luke Hinkel's then-minor son) ("the Estate") brought an action against Brock, Stone, and Henry County EMS, raising claims of negligence/gross negligence and loss of parental consortium.[1]

On October 8, 2018, the defendants filed a motion to dismiss, arguing that the claims against Henry County EMS and Brock and Stone in their official capacities were barred by sovereign immunity and that Brock and Stone were

---

[1] The record shows that Colton T. Hinkel, individually and as Administrator of the Estate of Charles L. Hinkel III was substituted as the plaintiff on February 26, 2021. The notice of appeal does not, however, reflect the substitution.

entitled to qualified official immunity in their individual capacities. After lengthy discovery and additional briefing, the trial court entered an order on January 13, 2021, finding that Henry County EMS and its employees in their official capacities were entitled to sovereign immunity and governmental immunity. Accordingly, the claims against Henry County EMS were dismissed and the claims against Brock and Stone in their official capacities were dismissed. The trial court further ruled, however, that valid questions remained regarding the performance of certain duties by Brock and Stone, including whether the LifePak defibrillator had been appropriately tested before the ambulance run. The court allowed the suit to remain active against Brock and Stone in their individual capacities.

On August 25, 2022, Brock and Stone filed a motion for summary judgment, asserting the defense of qualified official immunity. The Estate filed a response, arguing that the issue was stare decisis because the issue of qualified official immunity had been resolved by the trial court's prior order. On October 11, 2022, the trial court entered an order rejecting this argument, holding that it had not previously ruled on the issue of qualified immunity. It held there were two acts or omissions allegedly committed by Brock and Stone that were ministerial in character and thus not entitled to qualified immunity: (1) the allegation of a failure to perform a routine equipment check of the LifePak and, (2) the use of the Active 911 app, instead of the paper maps or GPS located in the ambulance, to navigate to

Hinkel's home. The trial court ruled that because these acts or omissions were administrative and/or required adherence to orders or protocols, they were inherently ministerial and not protected by qualified official immunity.

The case proceeded to trial against Brock and Stone in their individual capacities regarding the allegations that they used the wrong navigation tool and failed to check the defibrillator. Following a trial lasting six days, the jury announced it was deadlocked. The trial court declared a mistrial on November 4, 2022.

Brock and Stone then filed this interlocutory appeal from the October 11, 2022, order.

## STANDARD OF REVIEW

Summary judgment is proper when the record reflects there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Ritchie v. Turner*, 559 S.W.3d 822, 830 (Ky. 2018) (citing Kentucky Rules of Civil Procedure ("CR") 56.03). Generally, the "denial of a motion for summary judgment is . . . not appealable because of its interlocutory nature[.]" *Transportation Cabinet, Bureau of Highways, Commonwealth of Ky. v. Leneave*, 751 S.W.2d 36, 37 (Ky. App. 1988). An exception is made for an order denying a substantial claim of absolute immunity or qualified official immunity, which is immediately appealable. *Harrod v. Caney*, 547 S.W.3d 536, 540 (Ky.

App. 2018). The scope of our review on appeal is strictly limited "to the issue of immunity, and no substantive issues." *Baker v. Fields*, 543 S.W.3d 575, 578 (Ky. 2018). An appeals court reviews the issue of whether an official is entitled to qualified official immunity *de novo*. *Ritchie*, 559 S.W.3d at 830 (citation omitted).

## ANALYSIS

Qualified official immunity is intended to protect public officers and employees sued in their individual capacities "from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citation omitted). This type of immunity applies only "to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . ; (2) in good faith; and (3) within the scope of the employee's authority[.]" *Id.* (citations omitted). By contrast, "[a] government official is not afforded immunity from tort liability for the negligent performance of a ministerial act." *Patton v. Bickford*, 529 S.W.3d 717, 724 (Ky. 2016), *as modified on denial of rehearing* (Aug. 24, 2017).

"[P]romulgation of rules is a discretionary function; enforcement of those rules is a ministerial function." *Id.* (quoting *Williams v. Kentucky Department of Education*, 113 S.W.3d 145, 150 (Ky. 2003)). A "ministerial act or function is one that the government employee must do without regard to his or her

own judgment or opinion concerning the propriety of the act to be performed." *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014) (internal quotation marks and citation omitted).

Discretionary acts, by contrast, "are those involving quasi-judicial or policy-making decisions." *Id*. Immunity is provided for discretionary acts because the "courts should not be called upon to pass judgment on policy decisions made by members of coordinate branches of government in the context of tort actions, because such actions furnish an inadequate crucible for testing the merits of social, political or economic policy." *Yanero*, 65 S.W.3d at 519.

As a preliminary matter, we note that this appeal is taken from the order entered on October 11, 2022, several days before the trial. We are not permitted to consider any evidence that entered the record after the entry of that order, because we are "without authority to review issues not raised in or decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989).

In its order, the trial court held that Brock and Stone had a ministerial duty to use the GPS and maps located in the ambulance. The trial court found this duty stemmed from the Henry County EMS Standard Operating Procedures/Guidelines, Section 3: Operations, Article 6, which is entitled "Map Utilization." It states:

In order to respond to all emergencies in a quick and efficient manner, all employees must become familiar with, and be able to use the maps, response directions, and GPS systems located in all units. On all responses, both emergency and non-emergency[,] the non-driving crewmember shall look up the location on the map before going in route, or shortly thereafter.

Even though most employees are familiar with the location of runs, required map use will reinforce map utilization and allow quick reference should a detour or alternate route need to be selected.

The trial court noted that Brock and Stone in their depositions admitted the standard operating procedures required the use of maps, response directions, and GPS units located in the vehicles. On the day in question, however, the trial court found they "utilized a cellphone app called Active 911 instead of the maps, response directions, and GPS units located in the vehicle to attempt to locate the decedent's residence. Unfortunately, they were misdirected, not immediately able to locate Mr. Hinkel's home, and were delayed arriving at the location to provide services."

In her deposition, Brock and Stone's supervisor was asked whether there was a policy and procedure that required an EMT or paramedic to map the route before going on a run. She replied that there was not. She stated:

We have what's called the Active 911 system, . . . it's an app you can download on your phone – and when the run gets dispatched over the radio, they send out this alert through this app. It doesn't always work. It doesn't always give you the right directions. But we do have a

-8-

> map book, as well, in our ambulances. So . . . it's good to have an idea of where you're going in the county before you take off, but a lot of people – . . . the app gives you the city that you're going to, so a lot of people head for that city and then once . . . they're close to the address, then they figure that part out.

The defendants' attorney read aloud the "Map Utilization" procedure set forth above and asked: "And did Henry County EMS tell the employees to double-check with the map book, or were they allowed to use their telephone, or did you guys give them any direction on that?" The supervisor responded: "Whatever they felt most comfortable with." She explained that the GPS systems in the ambulances did not all work and "most people felt more comfortable using their phones." She stated: "There is a GPS feature on the Active 911 that we used. So, most people used that and the map book. They didn't usually fool with the GPSs on the truck."

The trial court further noted that Brock and Stone in their depositions admitted that Henry County EMS protocols and procedures required them

> to complete a check sheet of the equipment and supplies in their ambulance unit. This check was to occur at the beginning of each shift. That check sheet includes the LifePak and directions to run a test of its functionality at the beginning of each shift. Upon completion of the daily check sheet, it was to be submitted to the EMS Director for filing. There remains a question of material fact whether the Defendants completed the daily check list and the test of the LifePak at the start of their shift. There is no dispute the LifePak malfunctioned and the

daily check list for the day in question has never been produced.

The record contains a copy of the Daily Ambulance Check form. The supervisor testified in her deposition that they were required to keep the completed check forms and a copy of the printout from the LifePak to indicate it had been tested for functionality. Neither of these documents was produced.

Brock and Stone argue that the trial court's analysis is flawed as a matter of law. They contend that the threshold question in determining whether a defendant is entitled to qualified official immunity is not whether an act is ministerial or discretionary, but whether the act is causally related to the "violation of constitutional, statutory, or other clearly established right of the complainant." *Rowan County v. Sloas*, 201 S.W.3d 469, 476 (Ky. 2006), *as corrected* (Sep. 26, 2006) (internal quotation marks and citation and omitted). According to the appellants, the Estate must initially prove that any delay attributable to the appellant's use of the app and their alleged failure to test the defibrillator were the actual and proximate cause or causes of Hinkel's death. They argue that they were entitled to summary judgment because the Estate failed to come forward with non-speculative evidence that Brock and Stone did not check the defibrillator. They further contend that the alleged failure to check the defibrillator and the use of the Active 911 App were not the "but for" causes or the proximate causes of Hinkel's death. In other words, they contend that the trial court improperly analyzed

whether the duties at issue were discretionary or ministerial without first determining whether the alleged acts and omissions were the actual and proximate cause of harm to Hinkel.

This is an interlocutory appeal from an order denying summary judgment to Brock and Stone specifically on their claim of qualified official immunity. Determining causation is beyond the scope of our review, which is strictly limited "to the issue of whether immunity was properly denied, nothing more." *Baker*, 543 S.W.3d at 578. In *Baker*, a student filed suit against school officials after she slipped on ice in the school's parking lot. Fields and Rain, two members of the grounds crew, sought qualified official immunity. The trial court denied the motion on the grounds that snow and ice removal duties were ministerial in nature. Fields and Rain filed an interlocutory appeal. This Court affirmed the trial court's ruling that the removal of ice and snow was a ministerial duty and further decided that the defendants were entitled to summary judgment as a matter of law based on the facts of the case, specifically, that Fields and Rain did not have a duty to remove the ice and snow. The Kentucky Supreme Court reversed this decision because it exceeded the scope of appellate review by deciding the substantive issue of negligence:

> Conclusively determining the claim of negligence in this case was outside the scope of interlocutory appellate review. Determining whether the act of snow and ice removal is a discretionary or ministerial function is

-11-

different from determining whether Fields and Rains had a duty to remove such snow and ice. In other words, at this point, the trial court has simply determined that the act of snow and ice removal is a ministerial function as a matter of law; the factfinder must determine whether Fields and Rain possessed the requisite duty to remove the snow and ice based on the factual circumstances of this case, as this, in part, determines the substantive claim of negligence. Only the issue of qualified official immunity may be decided upon an interlocutory appeal of such issue, not additional issues not presented on appeal, such as the substantive claim of negligence.

*Id*.

If we did as the appellants argue and decide whether their alleged breaches of duty were the cause of Hinkel's death, we would conclusively determine the Estate's substantive claim of negligence – in clear contravention of the holding in *Baker*. Significantly, the cases relied upon by the appellants that address underlying negligence claims are appeals taken from the grant, not the denial, of summary judgment, and consequently, they are not interlocutory. For example, *Rowan County. v. Sloas*, 201 S.W.3d 469, 473 (Ky. 2006), *as corrected* (Sep. 26, 2006), is an appeal taken from the circuit court's grant of summary judgment on immunity grounds to a county, its jailer and a deputy jailer in a suit brought by a prisoner; *Patton v. Bickford*, 529 S.W.3d 717, 721-22 (Ky. 2016) is an appeal from a grant of summary judgment on the grounds of qualified official immunity to a group of teachers and administrators in a lawsuit brought by the estate of a student who committed suicide after being bullied at school. By

contrast, *Haney v. Monsky* involved an interlocutory appeal in which the Kentucky Supreme Court reversed the trial court and the Court of Appeals. It ruled that the appellant was protected by qualified official immunity because her duties were discretionary and consequently, she was entitled to summary judgment. The Court arrived at this ruling without assessing the underlying claims of negligence against the appellee. 311 S.W.3d 235, 237 (Ky. 2010), *as corrected* (May 7, 2010)

The bulk of Brock and Stone's arguments go to the heart of the Estate's substantive claims of negligence and may not be resolved at this stage. "Otherwise, interlocutory appeals would be used as vehicles for bypassing the structured appellate process." *Baker*, 543 S.W.3d at 578.

On the other hand, Brock and Stone's argument that the trial court erred when it found their use of the Active 911 app was ministerial rather than discretionary is well within the scope of our review. The duty they were alleged to have breached is the duty of reasonable care to Hinkel. This duty encompasses the duty to proceed expeditiously to his residence.

> At its most basic, a ministerial act is one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts. That a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature. And an act is not necessarily outside the ministerial realm just because the officer performing it has some discretion with respect to the means or method to be employed. . . .

-13-

In reality, a ministerial act or function is one that the government employee must do without regard to his or her own judgment or opinion concerning the propriety of the act to be performed. In other words, if the employee has no choice but to do the act, it is ministerial.

*Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014) (internal quotation marks and citations omitted).

Brock and Stone had no choice but to proceed to Hinkel's residence as quickly as safely possible. They had no choice but to do the act; it had to be performed without regard to their judgment or opinion. Questions of fact remain, however, about their choice of a navigation tool. The written operating procedure dictates the use of the paper maps and GPS located in the ambulance, whereas the testimony of their supervisor suggests that they were encouraged to use the Active 911 app in conjunction with the paper maps. Factual issues remain for the jury to determine whether they were negligent in not complying with written policy and procedure by using the app rather than the ambulance GPS and paper maps, or whether it was acceptable to use the app in light of the testimony from their supervisor, or whether they were negligent in not consulting the paper maps in conjunction with the app. "[W]hether a ministerial act was performed properly, i.e., non-negligently, is a separate question from whether the act is ministerial, and is usually reserved for a jury." *Id*.

Brock and Stone do not challenge the trial court's holding that their duty to check the defibrillator was ministerial and consequently this ruling will not be reviewed here.

## **CONCLUSION**

For the foregoing reasons, the trial court's order is affirmed insofar as Brock and Stone are not entitled to qualified official immunity for the claims that they were negligent in using the Active 911 app to navigate to Hinkel's residence and in allegedly failing to perform the routine check of the LifePak defibrillator.


THOMPSON, CHIEF JUDGE, CONCURS.

ECKERLE, JUDGE, CONCURS IN RESULT ONLY.


BRIEFS AND ORAL ARGUMENT
FOR APPELLANTS:

Ed Monarch
William G. Carroll
Louisville, Kentucky

BRIEF FOR APPELLEE:

Hans G. Poppe
Scarlette Burton Kelty
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Scarlette Burton Kelty
Louisville, Kentucky